UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,
A Rhode Island Corporation,

        *Plaintiff*,

vs.

DAVID H. HERRERA and BECKY L.
HERRERA, husband and wife, and the
martial community thereof,

        *Defendants*,

and

BRIAN ONUTZ and AMY ONUTZ, a
married couple,

        *Intervenors*.

CASE NO. 2:19-cv-00250-BJR

ORDER GRANTING DEFENDANTS'
AND INTERVENORS' MOTIONS FOR
SUMMARY JUDGMENT, DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT, AND DENYING JOINT
STIPULATED MOTION TO SUSPEND
DEADLINES

## I. INTRODUCTION

Plaintiff Metropolitan Property and Casualty Insurance Company ("MetLife") initiated the current action for declaratory relief, seeking a judicial determination that its insurance policies (the "Herrera Policies") held by Defendants David Herrera and Becky Herrera ("Defendants") exclude coverage for the injuries caused when Defendant David Herrera caused an accident on the Burke-Gilman Trail while riding an electronic bicycle. Defendants and Intervenors Brian Onutz and Amy Onutz ("Intervenors") ask for the Court to rule that the Herrera Policies provide coverage for the accident. Currently before the Court are multiple motions, including: (1) MetLife's Motion for

1

Summary Judgment, Dkt. No. 12; (2) Defendants' Cross Motion for Summary Judgment, Dkt. No. 25; (3) Intervenors' Motion for Summary Judgment, Dkt. No. 29; and a Joint Motion to Suspend Deadlines, Dkt. No. 37.

Having reviewed the motions, oppositions thereto, the record of the case, and the relevant legal authorities, the Court will grant Defendants' and Intervenors' motions, deny Plaintiffs' motion, and deny the joint motion. The reasoning for the Court's decision follows.

## II. BACKGROUND

Defendants own an electronic bicycle, an ODK U500 V3 model manufactured by Juiced Bikes. Dkt. No. 12 at 6–7. This electronic bicycle has pedals, a battery, and an electric motor and comes with a twist throttle that sends power from the battery to the motor. *Id.* The motor, which is attached to the front wheel, then spins and propels the bicycle forward. *Id.* One can ride the bicycle with its battery power alone, ride it like a traditional bicycle with pedal power alone, or ride it with some battery power and some pedal power simultaneously. *Id.*

On October 30, 2018, Defendant David Herrera was riding this electronic bicycle on the Burke-Gilman Trail, a recreational trail in Seattle, when he collided into another cyclist, Intervenor Brian Onutz. Dkt. No. 12 at 5. Intervenor Brian Onutz, who was riding a traditional bicycle, suffered personal injury as a result. *Id.* Defendants allege that Defendant David Herrera was riding his electronic bicycle like a traditional bicycle, *i.e.*, moving it exclusively by manually manipulating the pedals, at the time of the accident. Dkt. No. 25 at 1–2.

Defendants have three insurance policies with MetLife that were in effect on the date of the collision: (1) the Homeowner's Policy, (2) the Landlord's Dwelling Policy, and (3) the Auto Policy. Dkt. No 12 at 2–5. The Homeowner's Policy and the Landlord's Dwelling Policy both

2

provide that MetLife "will pay the reasonable medical expenses . . . to others who sustain bodily injury as a result of an accident, while they are ... off the insured premises, if the bodily injury . . . is caused by [the insured's] activities." *Id.* at 3–4. Both policies, however, exclude coverage for "bodily injury or property damage arising out of . . . the ownership . . . operation, or use . . . of a motorized land vehicle . . . operated by [the insured]." *Id.* The policies do not define the term "motorized land vehicle." *Id.*

The Auto Policy provides that "[w]e will pay damages for [bodily injury] and [property damage] to others for which the law holds an insured responsible because of a loss resulting from owning, maintaining, or using a covered auto or non-owned auto[.]" *Id.* at 5.

In February 2019, MetLife filed its complaint for declaratory relief, seeking a judicial determination that Herrera Policies exclude coverage for Intervenor Brian Onutz's personal injuries caused by the collision on the Burke-Gilman Trail. Dkt. No. 1 at 8. Defendants filed their answer in March 2019 and brought four counterclaims against MetLife: (1) breach of insurance contract, (2) bad faith, (3) violation of the Washington Consumer Protection Act, and (4) coverage by estoppel. Dkt. No. 8 at 12–17. After MetLife moved for summary judgment on its declaratory relief claim, Dkt. No. 12, Defendants filed a Cross Motion for Summary Judgment, seeking a judicial determination that the MetLife policies provide coverage for injuries resulting from an electronic bicycle accident as long as its motor was not on at the time of the accident, Dkt. No. 25.[1] Defendants did not seek a ruling on their other counterclaims against MetLife. *Id.* In August

---

[1] Defendants have also requested oral argument. *See* Dkt. No. 25 at 1. The Court, however, determines that this matter can be resolved on the briefs submitted by the parties, and will therefore deny the request.

3

2019, Intervenors filed their complaint for declaratory relief, seeking a similar judicial determination to Defendants, Dkt. No. 21 at 5–6, and subsequently moved for summary judgment, Dkt. No. 29. On November 8, 2019, the parties filed a Joint Motion to Suspend Deadlines, seeking extensions for the upcoming expert reports and discovery deadlines. Dkt. No. 37.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001); *see also Massachusetts Bay Ins.*, 383 F. Supp. 3d at 1156. In situations with dueling summary judgment motions, the Court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)). Here, the parties do not dispute any material facts in this case. Dkt. No. 12 at 1. Therefore, it is appropriate for the Court to consider summary judgment.

## IV. DISCUSSION

"Interpretation of an insurance policy is a question of law." *Grange Ins. Co. v. Brosseau*, 776 P.2d 123, 125 (Wash. 1989). A court construes an insurance policy as a whole and should interpret the policy language in a "fair, reasonable, and sensible" way that an average person would understand. *Id.* Therefore, "undefined terms in a policy are given their plain, ordinary, and popular meaning." *Waters v. Farmers Ins. Co. of Washington*, 924 P.2d 37, 39 (Wash. Ct. App. 1996). The court may "look to the dictionary to determine the common meaning." *Black v. Nat'l Merit Ins. Co.*, 226 P.3d 175, 178 (Wash. Ct. App. 2010). "However, to be meaningful, dictionary definitions must be regarded in the context of the particular insurance policy." *Id.*

When the policy language is clear and unambiguous, the court "must enforce it as written" and may not create ambiguity. *Id.* The policy language is ambiguous only if "on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Id.* On the other hand, when the policy language is ambiguous, the court "construes it against the insurer and in favor of the insured." *Waters*, 924 P.2d at 39. Moreover, the court "strictly construes exclusionary clauses against the insurer." *Id.*; *see also George v. Farmers Ins. Co. of Washington*, 23 P.3d 552, 557–58 (Wash. Ct. App. 2001) ("[T]he purpose of insurance is to give protection and it can be presumed that such was the intent of the parties. Exclusions are contrary to this basic intent, and thus should not be extended beyond their clear and unequivocal meaning.").

### A. Homeowner's Policy and Landlord's Dwelling Policy

The Homeowner's Policy and the Landlord's Dwelling Policy provide coverage for those who suffer bodily injuries caused by Defendants while they are off the insured premises. Dkt. No. 12 at 3. Both policies, however, contain the previously described "motorized land vehicle"

5

exclusion clause. *See supra* at 2–3. The parties dispute whether this exclusion clause applies to the collision between Defendant David Herrera and Intervenor Brian Onutz.

The term "motorized land vehicle" is not defined in the policies. To determine its "plain, ordinary, and popular" meaning, the Court may look to the dictionary for elucidation. *See Waters*, 924 P.2d at 39; *Black*, 226 P.3d at 178. While the parties do not dispute that a bicycle is a land vehicle, they dispute meaning of the word "motorized." All parties rely on the same dictionary definition of the word "motorized," provided by Merriam-Webster Online:

> 1: equipped with a motor : powered by a motor
> . . . .
> 2: of, relating to, or involving a motor or motor-driven vehicle
> . . . .
> 3: equipped with or transported by motor-driven vehicles

Dkt. No. 13 at 50 (Declaration of Plaintiff's counsel providing definition of "motorized" from Merriam-Webster Online"); Dkt. No. 12 at 10; Dkt. No. 25 at 8; Dkt. No. 25 at 13; *see also* Merriam–Webster Online Dictionary, https://www.merriam-webster.com/dictionary/motorized (last visited Nov. 12, 2019).

Relying on the first definition, "equipped with a motor," MetLife asserts that Defendants' electronic bicycle should be considered a motorized land vehicle because it is physically equipped with a motor. Dkt. No. 33 at 14. On the other hand, Defendants and Intervenors contend that the Court should adopt the other definition, "powered by a motor." Dkt. No. 25 at 9. They argue that Defendant David Herrera was not using a motorized land vehicle at the time of the accident because his bicycle was not being "powered by" a motor when he was "moving the bicycle exclusively with his own pedaling." *Id.*

6

In response, MetLife argues that the first definition of the term, "equipped with a motor," is unambiguous and therefore applies here. Dkt. No. 33 at 14. MetLife asserts that under this definition, Defendants' electronic bicycle is a motorized land vehicle simply because it is equipped with a motor and the fact that Defendant David Herrera was not using the motor at the time of the accident is irrelevant. *Id.*

In support of its position, MetLife cites two Washington cases, *George v. Farmer*, 23 P.3d 552 (Wash. Ct. App. 2001), and *Waters v. Farmers Ins. Co. of Washington*, 924 P.2d 37 (Wash. Ct. App. 1996), where Washington courts considered whether a similarly worded motorized land vehicle exclusion clause applied to accidents involving a derelict motor home, in the former case, and a forklift, in the latter case. Dkt. No. 12 at 11. In *George*, the court considered whether the policy language—"a motorized land vehicle used only on an insured location and not subject to motor vehicle registration"—applied to the derelict motor home that was exclusively used on the insured premises. *See* 23 P.3d at 556–59. In *Waters*, the court considered whether the policy language—"a motorized land vehicle . . . designed for travel on public roads"—applied to the forklift that was being driven on public roads. *See* 924 P.2d at 39.

The courts in those cases, however, did not examine the definition of the term "motorized land vehicle." In *George*, the parties disputed the meaning of the terms "used only on the insured location" and "subject to motor vehicle registration." *See* 23 P.3d at 557–59 (holding that the motor home was insured because it did not leave the insured property during the period of coverage and was not subject to motor vehicle registration). In *Waters*, the parties disputed meaning of the term, "designed for travel on public roads." *See* 924 P.2d at 39 (holding that there was coverage because it was ambiguous whether the term meant either that the forklift *could* be driven on public

7

roads or that it was *primarily designed* to drive on public roads). The Court finds these cases to be only marginally useful and not really on point as both the motor home and the forklift were being *powered by* motors when they caused injuries.

On the other hand, Defendants and Intervenors argue that the term "motorized land vehicle" is ambiguous because it has more than one reasonable meaning: (1) a land vehicle that is equipped with a motor and (2) a land vehicle that is powered or driven by a motor. Dkt. No. 25 at 8. Because the term is ambiguous, Defendants and Intervenors urge the Court to construe the term against MetLife and in favor of Defendants. *Id.* Defendants also cite *Waters*, in which that court considered whether the language in the exclusion clause, "vehicle . . . designed for travel on public roads," was ambiguous. *See* 924 P.2d at 39. As mentioned previously, that court held that the language was ambiguous because it could mean a vehicle that "can be driven on public roads" but it could also mean a vehicle that "is designed for travel primarily on public roads." *See id.* Because the language was ambiguous, the court construed it against the insurer. *See id.* That court added, "[t]his is particularly appropriate because the language is contained in an exclusion." *Id.* ("The court . . . strictly construes exclusionary clauses against the insurer.").

Defendants and Intervenors also point to Ninth Circuit precedent in the form of *Allstate Ins. Co. v. Pacheco*, 851 F.2d 257 (9th Cir. 1988), to support their assertion that "motorized land vehicle" is ambiguous. In that case, the Ninth Circuit examined the same phrase to determine whether a moped qualified as a "motorized land vehicle." It determined that the term was ambiguous as it applied to mopeds and thus there was coverage. *Id.* at 259.

MetLife, however, cautions against reliance on *Pacheco*, based on its heavy dependence on the eccentricities of Hawaiian law. Dkt. No. 33 at 17–18. In fact, the dissent in *Pacheco* warned

8

of the same. *Pacheco*, 851 F.2d at 261 (Wallace, J., dissenting) ("[t]o the extent that courts in other jurisdictions may look to the majority opinion in construing the same Allstate policy, they should be reminded that the majority's finding of ambiguity in the term 'motorized land vehicle' was impelled at least in part by its reading of the idiosyncrasies of Hawaii law").

A review of Washington state law, however, reveals many of the same bases to find ambiguity. Washington state law, for example, consistently treats electronic bicycles as traditional bicycles rather than other forms of motorized transit. Revised Code of Washington ("RCW") Title 46, which covers motor vehicles, includes electronic bicycles in the definition of traditional bicycles, WASH. REV. CODE § 46.04.071 (defining "Bicycle" as "every device propelled solely by human power, or an electric-assisted bicycle as defined in RCW 46.04.169"), and explicitly excludes such bicycles from the definitions of both "motorcycle" and "motorized foot scooter," WASH. REV. CODE § 46.04.330 (Motorcycle); WASH. REV. CODE § 46.04.336 (Motorized foot scooter); *see also* WASH. REV. CODE § 47.36.025(f)(ii). Like traditional bicycles, and unlike motorcycles, electronic bicycles are exempt from the State's registration requirement, WASH. REV. CODE § 46.16A.080(2), and do not require a driver's license to operate, WASH. REV. CODE § 46.20.500(3).

RCW Title 46 also consistently holds electronic bicycles to the same standards and regulations as traditional bicycles, rather than those of other forms of motorized vehicles. *See* WASH. REV. CODE § 46.37.530 ("[p]ersons operating electric-assisted bicycles and motorized foot scooters shall comply with all laws and regulations related to the use of bicycle helmets" as compared to helmet requirements of motorcycle riders); WASH. REV. CODE § 46.37.690 ("an electric-assisted bicycle or a rider of an electric-assisted bicycle is subject to the same provisions

9

of this title as a bicycle or the rider of a bicycle"); WASH. REV. CODE § 46.61.184 (requiring that "the operator of a bicycle . . . approaching an intersection, including a left turn intersection, that is controlled by a triggered traffic control signal using a vehicle detection device that is inoperative due to the size or composition of the bicycle. . . shall come to a full and complete stop at the intersection" and that "[f]or purposes of this section, 'bicycle' includes . . . an electric-assisted bicycle, as defined in RCW 46.04.169"); WASH. REV. CODE § 46.61.710(6) ("[e]lectric-assisted bicycles . . . may have access to highways of the state and may be parked to the same extent as bicycles"). Thus, the clear implication from a review of state law, as the Ninth Circuit conducted in *Pacheco*, 851 F.2d at 259, is that electronic bicycles are not motorized land vehicles, but instead are more akin to traditional bicycles.

As such, this Court finds that the term "motorized land vehicle" in the Herrera Policies is subject to two possible interpretations and is, therefore, ambiguous as the policy language could reasonably mean either a vehicle that simply has a motor or a vehicle that is powered by a motor. *See Waters*, 924 P.2d at 39.[2] Following the time-honored rule of construction that ambiguous policy language be construed in favor of the insured, especially in the case of exclusions, the Court determines that the term "motorized land vehicle" means vehicles powered by a motor. *See id.* As in *Waters*, where the court strictly construed the exclusionary clause against the insurer, the

---

[2] In fact, MetLife has been more explicit in its homeowners policies in the past as to the motorized land vehicle exception, explicitly listing "motorized bicycles." *See Metro. Prop. & Liab. Ins. Co. v. Landry*, 729 F. Supp. 1581, 1582 (M.D. La. 1990) (emphasis added) (involving a homeowners policy that explicitly stated "UNDER COVERAGES F [personal liability] AND G [medical payments to others], WE DO NOT COVER BODILY INJURY OR PROPERTY DAMAGE: 1. arising out of the ownership, maintenance, entrustment, by you to any person, operation, use, loading or unloading of: b. any land motor vehicle or any other motorized land conveyance, *including motorized bicycles*, owned or operated by, or rented or loaned to you.).

Court here narrowly interprets the "motorized land vehicle" exclusion clauses. *See id.* Accordingly, the exclusion clauses in the Homeowner's Policy and the Landlord Dwelling Policy do not exclude coverage for the bodily injury caused by Defendant David Herrera at a time when his bicycle was not powered by its motor.

**B. Auto Policy**

The Auto Policy, on the other hand, does not cover Defendants' electronic bicycle or the collision. As stated previously, the Policy provides that MetLife will "pay damages for [bodily injury] and [property damage] to others for which the law holds an insured responsible because of a loss resulting from owning, maintaining, or using a *covered auto* or *non-owned auto*[.]" Dkt. No. 12 at 5 (emphasis added).

The Policy includes two covered autos, a 2006 Toyota Prius and a 2005 Toyota Tundra. Dkt. No. 12 at 5. The electronic bicycle is not listed. *Id.* Thus, regardless of whether or not the electronic bicycle would be considered an "auto," which based on the foregoing is unlikely, it is not covered by the policy for the simple fact that it is not listed, has not been newly acquired, but is owned by the Defendants. *See id.* at 5 (a "Covered Auto" is "any auto . . . which is shown in the Declarations and is owned by, registered to, or leased by you or a relative . . . a substitute auto . . . [or] an auto which is newly acquired by you"); *id.* at 13 (a "Non-Owned Auto" is "an auto being used by you . . . with the owner's permission. The auto must not be owned by . . . you"); *id.* (a "Substitute Auto" is used "to replace a covered auto for a short time . . . due to . . . breakdown; destruction; or loss"); *see also id.* at 14 (the electronic bicycle "is not listed in the declaration page[,] . . . is owned by Herrera, and was acquired more than 30 days prior to the accident."). Defendants and Intervenors do not dispute that the Auto Policy does not cover provide coverage.

11

*See generally* Dkt. Nos. 25 and 31 (not addressing Auto Policy).

**C. Joint Motion to Suspend Deadlines**

As the Court hereby resolves the outstanding Motions for Summary Judgment, it will deny the Joint Motion to Suspend Deadlines.

## V. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' and Intervenors' Motions for Summary Judgment, Dkt. Nos. 25 and 29, DENIES Plaintiff's Motion for Summary Judgment, Dkt. No. 12, and DENIES the parties' Joint Motion to Suspend Deadlines.

DATED this 14th day of November, 2019.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE