UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,
A Rhode Island Corporation,

       *Plaintiff,*

  vs.

DAVID H. HERRERA and BECKY L.
HERRERA, husband and wife, and the
martial community thereof,

       *Defendants,*

and

BRIAN ONUTZ and AMY ONUTZ, a
married couple,

       *Intervenors.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 2:19-cv-00250-BJR

ORDER GRANTING DEFENDANTS'
MOTION FOR ATTORNEY FEES AND
COSTS

## I.  INTRODUCTION

Before the Court is Defendants David Herrera and Becky Herrera's ("Defendants") Motion for Attorney Fees and Costs under *Olympic S.S. Co. v. Centennial Ins. Co.*, 811 P.2d 673 (Wash. 1991). Dkt. No. 44. Previously, the Court granted Defendants' Cross Motion for Summary Judgment and held that Plaintiff Metropolitan Property and Casualty Insurance Company ("MetLife") was required to cover the bicycle accident between Defendant David Herrera and Intervenor Brian Onutz under the Defendants' Homeowner's and Landlord's Dwelling policies. Dkt. No. 39.

MetLife, for its part, does not contest the applicability of *Olympic Steamship* fees, but instead objects to individual expenditures claimed by Defendants in their motion. Having reviewed the motion, the opposition thereto, the record of the case, and the relevant legal authorities, the Court will grant Defendants' motion as elaborated in this order. The reasoning for the Court's decision follows

## II.    BACKGROUND

The underlying facts of this matter were elaborated in the Court's Order on Motions for Summary Judgment. *See* Dkt. No. 39 at 2–4. In brief, Defendant David Herrera and Intervenor Brian Onutz were involved in a bicycle accident on the Burke-Gilman Trial in Seattle while Defendant was riding an electronic bicycle. *Id.* at 2. MetLife filed for declaratory relief to determine whether Defendants' insurance policies covered the accident, or whether Defendant David Herrera's electronic bicycle fell within a coverage exception for "motorized land vehicle[s]." *See* Dkt. No. 1 (Complaint). Defendants answered and brought four counterclaims. *See* Dkt. No. 8. Then, all three parties moved for summary judgement. Dkt. Nos. 12 (MetLife), 25 (Defendants), 29 (Intervenors).

On November 14, 2019, the Court granted summary judgment in favor of Defendants and Intervenors who both sought coverage for the accident. Dkt. No. 39. The Court held that the insurance policies were ambiguous as to whether electronic bicycles qualified as "motorized land vehicle[s]" and that in the event of ambiguity the Court should err on the side of coverage. *See* Dkt. No. 39 at 5–11. Plaintiffs subsequently moved for, and the court granted, dismissal of their counterclaims, Dkt. Nos. 41 (Motion), 42 (Order).

Defendants then moved for attorney's fees and costs under the *Olympic Steamship* Doctrine and provided an invoice. *See* Dkt. No. 44 at 8–9. In total, they sought $72,886.69. MetLife, in its response, did not dispute the applicability of the *Olympic Steamship* Doctrine but drew issue with several of the invoiced expenses including (1) time spent for "unsuccessful counterclaim[s]"; (2) "mistaken/unrelated charges"; and (3) "charges not pertaining to the establishment of coverage." Dkt. No. 46 at 1–2. Consequently, MetLife seeks a reduction in Defendants' fees of $6,920.80. Defendants, in reply, defend the dispute charges and (4) now seek an additional $2,000 for time spent composing their reply less $377.70 is mislabeled time. Dkt. No. 47 at 2. As such, they now seek $74,508.99.

## III. DISCUSSION

### A. *Olympic Steamship*

Under *Olympic Steamship*, "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." *Olympic Steamship*, 811 P.2d at 681. This rule applies "where the insurer forces the insured to litigate questions of coverage." *Stone v. Gov't Employees Ins. Co.*, No. 16-civ-5383, 2017 WL 3424941, at *2 (W.D. Wash. Aug. 8, 2017) (quoting *McGreevy v. Oregon Mut. Ins. Co.*, 1904 P.2d 731, 735 n. 4 (1995)). *Olympic Steamship* "has been read broadly by Washington courts" and "[t]he only articulated limitation . . . is that no fees are awarded when the insurer does not dispute coverage, but merely disputes the value of the claim." *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1437 (9th Cir. 1995) (citing *Dayton v. Farmers Ins. Group*, 876 P.2d 896, 898 (Wash. 1994). Here, MetLife does not dispute *Olympic Steamship*'s applicability. *See generally* Dkt. No. 46.

3

Courts generally calculate *Olympic Steamship* fees using the lodestar method. *See Dennis v. Liberty Mut. Grp.*, No. 13-civ-989, 2014 WL 11997864, at *2 (W.D. Wash. June 19, 2014). This method entails "multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter." *Scott Fetzer Co. v. Weeks*, 859 P.2d 1210, 1215–16 (Wash. 1993). This Court has described the methodology as a four step process, including: (1) looking to the number of hours expended; (2) determining whether the hourly rate charged was reasonable; (3) multiplying hours by rate; and (4) determining whether the court "'needs adjustment either upward or downward to reflect factors not already taken into consideration.'" *See Dennis*, 2014 WL 11997864, at *2 (quoting *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 201–02 (Wash. 1983)). Further, "[i]n reviewing the reasonableness of the attorney's fees the court 'should discount hours spent on unsuccessful claims, duplicated or wasted effort, or otherwise unproductive time.'" *Id.* (quoting *Chuong Van Pham v. City of Seattle, Seattle City Light*, 151 P.3d 976, 981 (Wash. 2007)).

As to steps (2) and (4), MetLife does not contest the applicable attorney rates nor claims upward or downward departure factors. *See generally* Dkt. No. 46. Thus, the only issue before the Court is the reasonableness of Defendants' claimed fees and MetLife's objections thereto.

**B. Counterclaims**

First, MetLife objects to the billing entries for Defendants' voluntarily dismissed counterclaims. *See* Dkt. No. 46 at 2–3. MetLife does not provide a robust description of its objection to these charges. The Court assumes then that MetLife objects because it considers the counterclaims "unsuccessful," "duplicative," or "otherwise unproductive." *Dennis*, 2014 WL 11997864, at *2; *Scott Fetzer*, 859 P.2d at 1216 (quoting *Bowers*, 675 P.2d at 203). Defendants

4

respond that their counterclaims were neither unnecessary nor unreasonable because they constituted compulsory counterclaims under FRCP 13(a) and sufficiently related to the question of coverage. *See* Dkt. No. 47 at 2–3.

Reviewing the counterclaims, the Court determines that they were neither unnecessary nor unreasonable. The counterclaims included Breach of Insurance Contract, Bad Faith, Breach of Consumer Protection Act, and Coverage by Estoppel. Dkt. No. 8 at 12–17. These claims are sufficiently related to the question of coverage that principles of judicial economy made it prudent to assert them as related counterclaims. Further, since Defendants voluntarily withdrew the counterclaims after coverage was established, no unreasonable expenses were accumulated beyond the efforts necessary to file for their withdrawal.

For this same reason, this Court distinguishes the decision not to award "extra-contractual claims" in *Dennis*, 2014 WL 11997864, at * 3. That Court held the plaintiff could not recover *Olympic Steamship* fees for counterclaims for "time spent working on claims asserting a breach of duty of good faith and in collecting and analyzing medical and wage records." *Id.* That Court reasoned that those claims addressed "the value of the claim rather than the issue of coverage." *Id.* As that Court noted, "[t]his Court . . . resolved the issues related to claim coverage while declining to address issues related to these extra-contractual claims regarding bad faith." *Id.*

Here, however, Defendants presented their counterclaims along side their answer and review of the counterclaims shows they are related to litigating the question of MetLife's coverage. Defendants' Breach of Contract claim, for example, was based on the allegation that MetLife failed to properly investigate the accident and settle with Intervenors based on MetLife's contesting coverage. Dkt. No. 8 at 9–10. Similarly, Defendants' claim for Bad Faith alleged malfeasance on

MetLife's part in providing "misleading and incomplete communications regarding their insurance coverage." *Id.* at 13. Their claims for Breach of Consumer Protection Act and Coverage by Estoppel are much in the same vein. *Id.* at 16–17. Thus, the charges surrounding Defendants' counterclaims were sufficiently related to their coverage dispute and not unnecessary or unreasonable.

### C. Mistaken Charges

MetLife contests $337.70 of charges whose billing entries address a "mediation brief." Dkt. No. 46 at 4. As the parties never mediated, MetLife asserts that the mediation charges "appear to be in error." *Id.* They are in fact correct. Defendants reply that the references to a mediation brief are erroneous and were meant to refer to the summary judgment briefing. *See* Dkt. No. 47 at 4. To avoid controversy, however, Defendants' attorneys have given Defendants an invoice credit for the time and reduced their total sought *Olympic Steamship* fees by $337.70.

### D. Not Pertaining to Establishing Coverage

Finally, MetLife objects to $840.75 worth of time in which Defendants' counsel coordinated with the MetLife-appointed defense for the underlying litigation against Intervenors over liability for the accident. Dkt. No. 46 at 4–5. The Court determines that it was reasonable for counsel to have conferred about the underlying liability case.

### E. Reply Expenses

Defendants seek an additional $2,000 expended to compose their reply. The Court finds it reasonable for Defendants to have taken the time to compose a reply in defense of their sought after fees.

6

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion for Attorney Fees and Costs for $74,508.99.

DATED this 21st day of February, 2019.

_Barbara J. Rothstein_
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE